IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID ALLEN MAHAN, JR.,          )
                                 )
          Plaintiff,             )
                                 )
v.                               )     CIVIL ACTION NO. 16-0483-MU
                                 )
NANCY A. BERRYHILL,              )
Acting Commissioner of Social    )
Security,[1]                     )
                                 )
          Defendant.             )

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Allen Mahan, Jr., brings this action, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), seeking judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner") denying his claim for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the

Act") and for Supplemental Security Income ("SSI"), based on disability, under Title

XVI of the Act. The parties have consented to the exercise of jurisdiction by the

Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court.

(Doc. 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ.

P. 73, the parties in this case consent to have a United States Magistrate Judge

conduct any and all proceedings in this case, … order the entry of a final judgment,

and conduct all post-judgment proceedings.")). Upon consideration of the

administrative record, Mahan's brief, the Commissioner's brief, and oral argument

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure
and 42 U.S.C. § 405(g), Nancy A. Berryhill is substituted for former Acting
Commissioner Carolyn W. Colvin as the defendant in this action.

presented at the August 15, 2017 hearing before the undersigned Magistrate

Judge, it is determined that the Commissioner's decision denying benefits should

be affirmed.[2]

## I.  PROCEDURAL HISTORY

Mahan applied for DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and

for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d,

on April 24, 2013, alleging disability beginning on March 15, 2013. (Tr.142-51). His

application was denied at the initial level of administrative review on September 17,

2013. (Tr. 98). On November 15, 2013, Mahan requested a hearing by an

Administrative Law Judge (ALJ). (Tr. 99-100). After a hearing was held on

September 24, 2014, the ALJ issued an unfavorable decision finding that Mahan

was not under a disability from the date the application was filed through the date

of the decision, February 13, 2015. (Tr.15-27). Mahan appealed the ALJ's decision

to the Appeals Council, and, on July 27, 2016, the Appeals Council denied his

request for review of the ALJ's decision, thereby making the ALJ's decision the

final decision of the Commissioner. (Tr. 1-3).

After exhausting his administrative remedies, Mahan sought judicial review

in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The

Commissioner filed an answer and the social security transcript on December 15,

2016. (Docs. 10, 12). Both parties filed briefs setting forth their respective

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh
Circuit Court of Appeals. *See* Doc. 30. ("An appeal from a judgment entered by a
Magistrate Judge shall be taken directly to the United States Court of Appeals for
the judicial circuit in the same manner as an appeal from any other judgment of
this district court.").

positions. (Docs. 14, 18). Oral argument was held before the undersigned

Magistrate Judge on August 15, 2017. The case is now ripe for decision.

## II.  CLAIMS ON APPEAL

Mahan alleges that the ALJ's decision to deny him benefits is in error for the

following reasons:

1. The ALJ erroneously failed to assess all of Mahan's mental impairments when

formulating his residual functional capacity (RFC); and

2.  The ALJ erroneously failed to fulfill the duty to develop the record by not

ordering an updated consultative psychological examination.

(Doc. 14 at pp. 1-2).

## III. BACKGROUND FACTS

Mahan was born on August 26, 1978, and was 34 years old at the time he

filed his claim for benefits. (Tr. 142). He alleged disability due to a learning

disability (not being able to read), a left shoulder injury, and depression. (Tr. 43-45,

177, 203). He graduated from high school, but was in special education classes.

(Tr. 38, 178). He can read very little, but can do simple math and knows how to

use a calculator. (Tr. 39-40). He is not able to pay bills, count change, handle a

savings account, or use a checkbook because he "can't read." (Tr. 39-40, 186). He

participated in job training in maintenance through Job Corps in 2000. (Tr. 39,

178). He has worked as a custodian, a crane company helper, a manual laborer, a

groundskeeper/maintenance man, and a satellite installer. (Tr. 40-41, 178). Mahan

last worked on March 15, 2013. (Tr. 177). He testified that he has had job

opportunities, but has not been able to pass the tests required for the jobs. (Tr. 42).

At the time of the hearing before the ALJ on September 24, 2014, Mahan

lived with his wife and thirteen month old child. (Tr. 38). During the relevant time

period, he engaged in normal life activities; such as, handling his personal care,

taking care of his son while his wife was at work, feeding and bathing the family

dogs, helping clean the house by sweeping and mopping, mowing the yard with a

riding lawn mower, making minor repairs to the house, running errands, grocery

shopping, and running the sound equipment at church on Sunday. (Tr. 45-49, 183-

86). He enjoys fishing, taking care of his dogs, watching television, and handy man

activities that he can perform with his limitation of not being able to lift over 30

pounds. (Tr. 187).

After conducting a hearing, the ALJ made a determination that Mahan had

not been under a disability during the relevant time period, and thus, was not

entitled to benefits. (Tr.16-41).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings

that are relevant to the issues presented in her February 13, 2015 decision:

> **3.    The claimant has the following severe
> impairments: history of left shoulder injury, mild
> anxiety and depression, and reading disorder (20 CFR
> 404.1520(c) and 416.920(c)).**
>
> **4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments in 20
> CFR Part 404, Subpart P, Appendix 1(20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
> 416.926).**

* * *

4

The evidence does not demonstrate that the claimant has valid IQ scores of 70 or below or mental impairments that cause marked restriction of [his] activities of daily living, marked difficulties in maintaining social functioning, marked difficulties maintaining concentration, persistence or pace, or repeated episodes of decompensation of extended duration, as required by Sections 12.02, 12.04 and 12.05 of the Listings (Exhibit 7F).

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Medical Listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has none restriction. The claimant is capable of initiating and participating in activities such as cleaning, shopping, and maintaining a residence independent of supervision or direction. While the claimant's impairment may interfere with complex activities, the performance of a simple routine is appropriate, effective and sustainable (Exhibits 4F, 5F, and 7F).

In social functioning, the claimant has mild difficulties. The claimant is able to initiate social contacts, communicate clearly, participate in group activities and demonstrate cooperative behaviors. Medical evaluations, discussed below, contain indication of at least some difficulty. Nonetheless, the evidence does not suggest greater than moderate limitation in this domain (Exhibits 4F, 5F, 7F).

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant can sustain the focused attention and concentration necessary to permit the timely and appropriate completion of tasks commonly found in routine and

5

repetitive, not detailed or complex, work settings (Exhibits 4F, 5F, and 7F).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The record does not indicate a significant sustained loss of adaptive functioning.

The record evidences that the claimant has been treated for anxiety and depression. There is no history of psychiatric hospitalization. The claimant received treatment for dysthymic disorder and anxiety disorder at the Mobile County Health Department from August 13, 2013 through April 15, 2014. Reported symptoms of depression included loss of interest in activities, low self-esteem, little interest or pleasure in doing things, feeling down, and trouble concentrating. Reported symptoms of anxiety included feeling nervous, anxious, or on edge; worrying, and having trouble relaxing (Exhibit 5F). The claimant's symptoms have been medically managed with Celexa and Effexor (Exhibits 5F, 8F). The treatment records state that the claimant's response to treatment was fair (Exhibit 5F, 7) and on April 15, 2014, it was noted that the claimant's the medication (Effexor) was working (Exhibit 5F, 6).

In a psychological consultative examination on September 3, 2013, the claimant's mood seemed mildly depressed. His affect was appropriate, he did not appear anxious, thought processes were grossly intact, and insight, understanding, and judgment were fair. He was assessed as having dysthymic disorder and anxiety disorder, NOS. No limitations or restrictions were indicated. Psychologist Lucille T. Williams said it was likely that, in the next 6 to 12 months, the claimant would have a favorable response to treatment, including psychotherapy (Exhibit 4F).

The undersigned notes that the consulting psychologist, Dr. Lucille T. Williams, submitted a detailed report, which included psychological testing, a clinical interview, and observations. The undersigned finds that the examination was thorough and consistent with the evidence of record and has given Dr. Williams's findings considerable weight.

I have also taken into consideration the May 20, 2010 vocational rehabilitation findings of psychologist Thomas S. Bennett. The claimant was administered the Wechsler Adult Intelligence Scale-

Fourth Edition (WAIS-IV), which revealed a Full Scale IQ Score of 74. The claimant's reading score within the deficient range overall; his reading recognition skills, reading comprehension skills, and phonetic skills were all at the primary school level. His written spelling skills and skills and written expression work also extremely poor. He was assessed as having a reading disorder, disorder of written expression, with consideration to borderline intellectual functioning (Exhibit 7F).

The claimant was assigned a Global Assessment Functioning (GAF) score of 65, which is indicative of an individual who has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. Dr. Bennett concluded that the claimant could do adequate work in the hands portion of HVAC classes, but it was unlikely that he would be able to read technical materials of any sort (Exhibit 7F).

Although this report is well before the claimant's alleged onset date, I have taken Dr. Bennett's findings into consideration in limiting the claimant to simple, repetitive, and routine tasks.

* * *

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently; and can sit, stand, and walk 6 hours in an 8 hour day. The claimant can push and pull as much as he can lift and carry. The claimant can occasionally reach overhead with the left arm. The claimant would be limited to simple, repetitive, and routine tasks.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges disability due to residuals from a left shoulder injury, depression, anxiety, and inability to read well. At the hearing, the claimant testified that he has pain in his left arm, it is difficult to move his arm, and sometimes his hand goes numb on the left side. He said he has a hard time lifting anything with his left shoulder over a certain amount of weight. He said he is able to walk 8-10 hours, and has no problems walking or standing.

The claimant also said he has depression and anxiety, and he has a hard time concentrating. He said he can read some, but very little. He said he graduated with a high school diploma, and can only read simple words.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

* * *

Finally, while the record references instances of depression, and a reading disorder, anxiety, there is no evidence to show that this condition would preclude the claimant from performing simple, repetitive, and routine tasks within the parameters set out above.

(Tr. 20-25).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant

bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Mahan has asserted two grounds in support of his argument that the Commissioner's decision to deny him benefits is in error. The Court will address Mahan's contentions in the order presented**.**

**A. <u>ALJ's Assessment of Mental Limitations</u>**

Mahan asserts that the ALJ erred by failing to assess mental limitations when formulating Mahan's RFC even though the ALJ had found his reading disorder and mild depression and anxiety to be severe impairments. (Doc. 14 at p. 2). Mahan relies upon three separate arguments in support of this contention.

First, Mahan argues that the ALJ should have included his moderate difficulties in maintaining concentration, persistence, or pace in the hypothetical question posed to the VE. The only evidence of any difficulties in these arenas were Mahan's reports to the social worker and doctors who treated or examined him on several occasions between August of 2013 and April of 2014 that he had some trouble concentrating (Tr. 274-75, 279-303) and his testimony at the hearing that he has trouble concentrating (Tr. 45). On September 3, 2013, Mahan was examined by Dr. Lucile T. Williams, a clinical psychologist, for a disability evaluation. (Tr. 274). Dr. Williams noted that he did not appear anxious, but his mood seemed mildly depressed. (Tr. 275). Based on her examination, she opined that his estimated intelligence was low average. (*Id.*). He reported to her that he was experiencing low self esteem, difficulty concentrating, and decreased energy. (Tr. 274). She diagnosed him with Dysthymic Disorder (chronic mild depression) and Anxiety Disorder, Not Otherwise Specified, and opined that he would likely have a favorable response to treatment within the next six to twelve months. (Tr. 275).

He was also examined and treated at the Mobile County Health Department from August 13, 2013 to April 15, 2014. He was seen there by social worker Emma Harris for therapy for his mild depression and anxiety. (Tr. 279-303). When he saw

her on August 13, 2013, he reported that he was having a decreased ability to concentrate and was feeling anxious due to the recent birth of his son and his worries about being unable to find work because of his reading disorder and left shoulder pain. (Tr. 301). She assessed him with Anxiety disorder NOS with Learning Disability and depression features. (*Id.*). He continued with therapy with Harris on a regular basis. He saw Dr. Gregory Evans at the Health Department on April 15, 2014 for a follow-up visit. Dr. Evans noted that he was "[n]ot feeling tired or poorly" and had "no depression." (Tr. 279). He also saw Harris for a follow-up visit that day and she assessing him with Anxiety disorder NOS and noted that he was "making fair progress as evidence[d] by patient reporting 'feeling a little better' and scores decreasing 5 points from March 2014." (Tr. 282). Mahan testified that when he took the medication prescribed by the doctors that it helped with his depression. (Tr. 44).

After noting that she assessed Mahan with moderate difficulties with regard to concentration, persistence, or pace, the ALJ found that he could "sustain the focused attention and concentration necessary to permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings." (Tr. 21). Therefore, in the hypothetical given to the VE, the ALJ limited Mahan to "simple, repetitive and routine tasks." Based on the medical evidence submitted and Mahan's testimony, the Court finds that substantial evidence supported the ALJ's conclusion that this limitation accounted for Mahan's limits in concentration.

Next, Mahan asserts that the ALJ did not assign any mental limitations in her RFC finding that accounted for Mahan's reading disorder, which the ALJ had found to be a severe impairment. (Doc. 14 at p. 4). This assertion, however, is factually inaccurate because the ALJ specifically limited Mahan to light work with the additional limitation of simple, repetitive, and routine tasks. (Tr. 23). In her Decision, the ALJ recognized that Mahan had been tested and examined by psychologist Thomas S. Bennett and had been assessed with a 70 IQ score and deficient performance in reading skills. (Tr. 22-23). She stated that she had "taken Dr. Bennett's findings into consideration in limiting the claimant to simple, repetitive, and routine tasks." (Tr. 23). In determining Mahan's RFC, she specifically considered his testimony at the hearing that he could "read some, but very little" and "can only read simple words." (Tr. 24). Finally, the ALJ concluded that there was no evidence to show that Mahan's reading disorder "would preclude [him] from performing simple, repetitive, and routine tasks within the parameters" included in his RFC. (Tr. 25). The Court also finds that substantial evidence supported the ALJ's conclusion that this limitation accounted for Mahan's reading disorder.

Last, Mahan asserts that the ALJ erred in her RFC assessment because she did not take into account any inability to interact with co-workers, supervisors, or the public, or any inability to adapt to work place changes. In his brief, Mahan argues, without any support, that his anxiety and depression would affect these abilities. However, he presented no evidence of any such affect. In fact, the record shows that Mahan attends church every Sunday and helps with the sound system,

that he goes grocery shopping, and that he enjoys socializing with family. (Tr. 45-49, 183-86). The Court finds that the ALJ did not err in this regard.

**B.  ALJ's Failure to Order Updated Consultative Psychological Examination**

Mahan claims that the ALJ erred by not obtaining "an updated consultative psychological examination." (Doc. 14 at p. 5). Mahan, through his attorney, requested both on orthopedic examination and a psychological examination with IQ testing one week prior to the hearing before the ALJ. (Tr. 226). At the hearing, the ALJ discussed the requested orthopedic evaluation ("I also note that you sent a request for an orthopedic evaluation."), but did not mention a request for a psychological examination and Mahan's attorney did not correct the ALJ's statement or request such an examination. (Tr. 37). At the conclusion of the hearing, the following discussion ensued:

> ALJ:  Anything in close, before we close out?
> ATTY:  No, Your Honor. Just the note that I requested the orthopedic CE. Looks like the internal medicine said that he should do an ortho CE as well.
> ALJ:  I was trying to scan through the notes, the records that you had sent in. I didn't get very far. So I'm going to look through the records and then I'll -- you'll get something in the mail --
> ATTY:  Okay.
> ALJ:  -- one way or the other --
> ATTY:  All right.
> ALJ:  letting you know what our decision is. I had hoped to be able to at least scan through the records before the end of the hearing. But I didn't get through them.
> ATTY:  I mean I went through them obviously this morning, after I got them. And it looks like all the treatment for the Mobile County Health Department is all psychiatric treatment.
> ALJ:  That's -- actually what I was trying to look at. But I'll let both -- you'll get something in the mail.
> ATTY:  Okay.
> ALJ:  And if there is nothing further, the hearing in this matter is closed.
> ATTY:  Thank you, Your Honor.

14

(Tr. 62-63).

"The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Doughty v. Apfel*, 245 F. 3d 1274, 1281 (11th Cir. 2001). In this case, with regard to Mahan's mental impairments, the ALJ had Dr. Bennett's comprehensive medical examination, which included IQ testing, Dr. Williams's report from her consultative examination during the relevant period, and the records from Mahan's treatment at the Mobile County Health Department, which showed that he was slowly improving and had responded favorably to medication. Based on these records, the ALJ assessed some limitations in Mahan's ability to perform some work and included those in her RFC. Based on the fact that the record contains sufficient evidence of Mahan's mental impairment and the fact that Mahan's attorney did not discuss a consultative psychological evaluation at the hearing when that very subject was discussed, the Court finds that the ALJ did not err by not ordering another consultative psychological examination.

## CONCLUSION

As noted above, it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. It is well-established that this Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Mahan is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that

the decision of the Commissioner of Social Security denying Plaintiff David Allen

Mahan, Jr., benefits be **AFFIRMED**.

      **DONE** and **ORDERED** this the **24th** day of **August, 2017**.

                              s/P. BRADLEY MURRAY
                              **UNITED STATES MAGISTRATE JUDGE**